[No. E046844. Fourth Dist., Div. Two. Aug. 14, 2009.]

STANDARD PACIFIC CORPORATION, Petitioner, v.
THE SUPERIOR COURT OF SAN BERNARDINO COUNTY, Respondent;
JOAN GARLOW et al., Real Parties in Interest.

COUNSEL

Newmeyer & Dillion, John A. O'Hara and James S. Hultz for Petitioner.

No appearance for Respondent.

Anderson & Kriger, Clayton M. Anderson, Sarita T. Patel and Karen Nelson for Real Parties in Interest.

OPINION

GAUT, J.—

## INTRODUCTION

Civil Code section 895 et seq. establishes procedures and requirements with respect to construction defect cases involving homes and homeowners.[1] (For convenience, we will sometimes follow the lead of petitioner Standard Pacific Corporation and refer to the statutes as the "Fix-it" law.) Section 910 sets out "prelitigation procedures" to be followed by plaintiffs before suit can be filed, procedures that can be summarized as "notice and opportunity to repair."[2] Section 912 in turn sets out certain requirements for builders with respect to documentation and information to be provided to homeowners. As a sanction, or incentive to comply, section 912 also provides, in subdivision (i), that a "builder who fails to comply with any of these requirements . . . is not entitled to the protection of this chapter, and the homeowner is released from the requirements of this chapter and may proceed with the filing of an

---

[1] All further statutory references are to the Civil Code unless otherwise indicated.

[2] Section 910 provides that "[p]rior to filing an action against any party alleged to have contributed to a violation of the standards set forth in Chapter 2 . . . , the claimant shall initiate the following prelitigation procedures: [¶] (a) The claimant . . . shall provide written notice . . . to the builder . . . of the claimant's claim . . . . That notice shall . . . describe the claim . . . ."

Section 916 then gives the builder the election to inspect the property and section 917 authorizes the builder to avoid litigation by making a written offer to repair the problems. The homeowner "shall authorize the builder" to perform the repair if offered. (§ 918.)

action . . . ." The simple question presented by this petition is whether a plaintiff who does not follow the procedures set out in section 910 must first establish the builder's noncompliance with section 912, or whether a plaintiff is free to file suit and need not step back to perform the "notice and opportunity to repair" position until the builder affirmatively establishes that it has complied with its own obligations.

In this case, the trial court concluded that it was up to petitioner—the builder—to establish that it had "chosen" to "opt-in" to the statutory scheme by performing its disclosure obligations under section 912. We conclude that this interpretation of the statutes was incorrect, and that the burden is on the *plaintiff* (here real parties in interest) to either comply with section 910 or to establish why he or she need not do so. Accordingly, we grant the petition with directions.

## STATEMENT OF FACTS

Real parties in interest—several homeowners—filed this action on May 5, 2008, stating causes of action for strict liability, strict products liability, negligence, and negligence per se. All causes of action were based on problems relating to the construction of homes located within a development undertaken by petitioners. The complaint did not allege that real parties in interest had complied with the Fix-it law by giving petitioner an opportunity to repair the claimed defects.

As authorized by section 930, subdivision (b),[3] petitioner brought a motion to stay proceedings until real parties in interest complied with their obligations. Real parties in interest responded with the argument that because petitioner had not complied with section 912, they did not have to follow the "prelitigation procedures." This assertion was not supported by any factual showing that petitioner had, in fact, breached any of its obligations; implicitly it was the position of real parties in interest that petitioner had to affirmatively establish its compliance.[4]

---

[3] "If the claimant does not conform with the requirements of this chapter, the builder may bring a motion to stay any subsequent court action or other proceeding until the requirements of this chapter have been satisfied. The court, in its discretion, may award the prevailing party on such a motion, his or her attorney's fees and costs in bringing or opposing the motion."

[4] Similarly, in their return, real parties in interest continue to assert petitioner's noncompliance, again without evidentiary support.

This position was adopted by the trial court,[5] which denied petitioner's motion and also awarded sanctions in the amount of $1,000.[6]

This petition followed.

## DISCUSSION

■ In construing a statute, our general goal must always be to effectuate the legislative intent. (*Wilcox v. Birtwhistle* (1999) 21 Cal.4th 973, 977 [90 Cal.Rptr.2d 260, 987 P.2d 727].) We begin by considering the genesis and purpose of the Fix-it law and the legislative materials surrounding its enactment.[7] The analysis of the Senate Committee on the Judiciary of Senate Bill No. 800 (2001–2002 Reg. Sess.) as amended August 28, 2002, page 1—which became the Fix-it law—comments that it was the result of "extended negotiations between various interested parties" and was intended to address both builders' concerns about the costs of construction defect litigation, and homeowners' concerns over recent legal decisions prohibiting suit until actual damage was incurred. (See *Aas v. Superior Court* (2000) 24 Cal.4th 627 [101 Cal.Rptr.2d 718, 12 P.3d 1125].) As adopted, the bill's provisions included detailed construction standards for residential structures (§ 896) and a requirement that builders provide a one-year "fit and finish" warranty (§ 900), and it established a new 10-year statute of limitations (§ 941). These provisions clearly benefit homeowners. On the other hand, the bill also required homeowners to follow all recommended maintenance schedules and practices at the risk of justifying an affirmative defense in any litigation by the homeowner (§ 907), and it also established the "prelitigation procedure" at issue here (§ 910 et seq.). These portions of the bill would benefit builders by reducing or eliminating some claims and reducing litigation costs.

■ Real parties in interest characterize Civil Code section 912 as an "opt-in" statute—that is, that the builder, by complying with the notice and documentation provisions, may "elect" to be covered by the prelitigation

[5] The court did not invite discussion and announced its ruling by reading from what appears to be a research memorandum.

[6] It is not clear whether this award, denominated "sanctions" by the trial court, was intended to cover the attorney fees and costs authorized by statute, or if it was imposed as a true bad faith sanction. (See Code Civ. Proc., § 128.5.)

[7] On October 16, 2008, petitioner filed a motion requesting this court to take judicial notice. The motion is granted and we take judicial notice of the materials supplied by petitioner. (Evid. Code, § 452, subd. (c); *Arya Group, Inc. v. Cher* (2000) 77 Cal.App.4th 610, 614, fn. 3 [91 Cal.Rptr.2d 815].) Real parties in interest argue that resort to these materials is unnecessary because the statutes are unambiguous. While we might agree that the statutes are reasonably clear, the fact that real parties in interest are urging, and the trial court adopted, an interpretation contrary to our own suggests that sufficient ambiguity exists to make examination of these materials appropriate.

procedure. If this were so, we would agree that the builder would be obligated to establish compliance in order to show that it was entitled to enforce the prelitigation procedure. (See Evid. Code, § 500.)[8] However, we reject the argument of real parties in interest. Nothing in Civil Code section 912 suggests that it is *optional* with the builder. The introductory clause of the statute provides that "A builder *shall do all of the following* . . . ."[9] (Italics added.) This is clearly mandatory in accordance with the usual rule that "shall" expresses a mandatory requirement, while the use of "may" would confer discretion or choice. (*Woodbury v. Brown-Dempsey* (2003) 108 Cal.App.4th 421, 433 [134 Cal.Rptr.2d 124].) The Legislature was concerned with affording certain information and protection to homeowners, and there is nothing in Civil Code section 912 (or anywhere else, as far as we can see) that permits a builder to choose not to provide that information and protection. Such would clearly be contrary to the legislative intent.

Rather, the statute provides a *sanction* for noncompliance—the builder who fails to comply is "not entitled to the protection of this chapter, and *the homeowner is released from the requirements of this chapter* . . . ." (§ 912, subd. (i), italics added.) Common sense tells us that a homeowner cannot be "released" from a requirement unless he or she was *subject to the requirement in the first place*.

The "opt-in" argument of real parties in interest also makes no sense because the prelitigation procedures were obviously adopted at the request of the builders and associated parties involved in the discussions with the Legislature, and there is no apparent reason why any builder would *not* want to be covered. Evidently recognizing this, the Legislature determined that "releasing" the homeowner from the obligation of following the prelitigation procedures would be the most effective threat to ensure careful compliance with the requirements of section 912.

The prelitigation procedures contained in the Fix-it law offer the builder the opportunity to avoid expensive litigation by correcting any defects when notified by a dissatisfied homeowner. As the legislative analysis notes, these provisions "respond to concerns expressed by builders, subcontractors, and insurers over the costs of construction defect litigation their [*sic*] impact [may

---

[8] "Except as otherwise provided by law, a party has the burden of proof as to each fact the existence or nonexistence of which is essential to the claim for relief or defense that he is asserting." (Evid. Code, § 500.)

[9] The word "shall" appears approximately 15 more times in section 912 describing the builder's obligations. In the circumstances, we consider real parties in interest's point that the word "mandatory" does *not* appear to be unpersuasive. We also note that the legislative analysis of which we have taken judicial notice comments that the bill establishes "a *mandatory* procedure prior to the filing of a construction defect lawsuit."

have] on housing costs in the state." We therefore conclude that the homeowner's obligation to follow the prelitigation procedure is the "norm" under the Fix-it law.

■ Having reached this point, there is no difficulty in determining that the *homeowner* must bear the burden of showing that he or she need not follow those procedures. As a rule, the party seeking to rely on an exception to a general rule has the burden of proving the exception. (*Norwood v. Judd* (1949) 93 Cal.App.2d 276, 282 [209 P.2d 24].) For example, in a criminal case, the burden is on the People to establish the existence of an exception to the requirement of a search warrant (*People v. Williams* (2006) 145 Cal.App.4th 756, 761 [52 Cal.Rptr.3d 162]); while in dependency proceedings, if there is a presumption that parental rights should be terminated, the parent has the burden of showing that an exception applies (*In re Megan S.* (2002) 104 Cal.App.4th 247, 252 [127 Cal.Rptr.2d 876]). ■ Applying this rule, if a homeowner files suit without having followed the prelitigation procedures, it is incumbent upon the homeowner to factually establish that he has been "released" from this obligation due to the builder's failure to comply with section 912.[10]

■ In this case, as we have noted, real parties in interest simply asserted that petitioner had not complied with its duties under section 912, but did not explain in what manner, at what time, or with respect to which of those duties petitioner had failed to comply. Having found that it was real parties in interest's burden to show petitioner's noncompliance, we could simply direct the trial court to reverse the order and to grant petitioner's motion to stay. However, we are reluctant to require a potentially unfair result, which might be due solely to real parties in interest's error in believing that it was petitioner's duty to show that it *had* complied.

## DISPOSITION

Accordingly, we grant the petition with the following directions:

Let a peremptory writ of mandate issue, directing the Superior Court of San Bernardino County to vacate its order denying petitioner's motion to stay proceedings. The trial court shall set a new date for hearing, and shall at that

[10] This result also works consistently with the overall purpose of the Fix-it law. It would hardly diminish unnecessary costs if plaintiffs were encouraged to file suit and then put the builder to the effort and expense of proving that it had complied with section 912—especially as the builder could not know in advance in what respect the plaintiff contended it had failed to comply. Rather, it is far more economical to allow a plaintiff to sue only where it has already marshaled adequate evidence of noncompliance, which can be presented to the builder and, if necessary, to the court.

time grant petitioner's motion unless real parties in interest present sufficient evidence to carry their burden of showing petitioner's noncompliance with section 912. In any event, the trial court shall vacate its order for sanctions in favor of real parties in interest.

Petitioner to recover its costs.

Petitioner is directed to prepare and have the peremptory writ of mandate issued, copies served, and the original filed with the clerk of this court, together with proof of service on all parties.

Hollenhorst, Acting P. J., and McKinster, J., concurred.