[No. F061594. Fifth Dist. Dec. 14, 2011.]

DANIEL A. BAEZA et al., Petitioners, v.
THE SUPERIOR COURT OF KERN COUNTY, Respondent, CASTLE &
COOKE CALIFORNIA, INC., Real Party in Interest.

1216

COUNSEL

Milstein Adelman, Fred M. Adelman, Lee Jackson and Mayo L. Makarczyk for Petitioners.

No appearance for Respondent.

Jones & Beardsley, Craig N. Beardsley and Christopher E. Finberg for Real Party in Interest.

OPINION

HILL, P. J.—Petitioners seek a writ of mandate directing respondent trial court to vacate its order requiring them to comply with certain contractual nonadversarial prelitigation procedures prior to continuing to prosecute their construction defect action against real party in interest, Castle & Cooke California, Inc. (Castle & Cooke). We deny the petition.

## *FACTUAL AND PROCEDURAL BACKGROUND*

Petitioners are the owners of 32 homes purchased from Castle & Cooke, the developer. Petitioners and other plaintiffs[1] filed an action against Castle & Cooke and other defendants, alleging there are defects in the construction of their homes. Castle & Cooke moved for an order compelling petitioners and the owners of five other homes[2] to comply with certain statutory or contractual procedures applicable to claims of construction defects. It sought to compel the owners of homes in the Brighton Place, Brighton Parks, and Brighton Village developments to comply with contractual provisions for nonadversarial prelitigation procedures, including mediation, and judicial reference; it sought to compel the owners in the Villages of Brimhall and Brighton Estates to comply with statutory nonadversarial prelitigation procedures and contractual provisions for mediation and arbitration.

The statutory nonadversarial prelitigation procedures require that the homeowner give the builder notice of any alleged defects and an opportunity to repair them before the homeowner may file a construction defect action

---

[1] The first amended complaint named as plaintiffs the owners of 80 homes.

[2] The owners of the other five homes were subsequent purchasers, who did not purchase their homes directly from Castle & Cooke.

against the builder; they also provide for mediation of any dispute before the homeowner resorts to litigation. (See Civ. Code, §§ 910–938.)[3] The contractual procedures required the homeowners to give Castle & Cooke notice of any alleged construction defects and an opportunity to correct them; any problems remaining unresolved were to be addressed through mediation and judicial reference.

Petitioners opposed the motion, arguing the prelitigation procedures were not enforceable because Castle & Cooke failed to comply with certain statutory requirements. They argued the court should exercise its discretion to deny enforcement of the provisions for judicial reference and arbitration to avoid a multiplicity of proceedings and a possibility of conflicting rulings, and because the arbitration and judicial reference provisions were unconscionable.

After hearing, the trial court granted the motion in part. It ordered the 20 original purchasers in the Brighton Place, Brighton Parks, and Brighton Village developments to comply with the "contractual prelitigation alternative dispute resolution and judicial reference of disputes alleged, as needed." It ordered the 12 original purchasers in the Villages of Brimhall and Brighton Estates developments to comply with the "contractual pre-litigation mediation and binding arbitration of disputes alleged, as needed." It stayed the action as to both groups of original owners to permit compliance. It denied the motion as to the five subsequent purchasers and did not stay the action as to them.

Petitioners filed their writ petition, contending they were released from the requirement of complying with the statutory or contractual prelitigation procedures by Castle & Cooke's failure to comply with certain statutory disclosure requirements. They also contend the prelitigation nonadversarial procedures are not enforceable because some of their contracts contain provisions limiting damages that violate related statutes.[4]

*DISCUSSION*

I. *Writ Review*

 A writ of mandate "must be issued in all cases where there is not a plain, speedy, and adequate remedy, in the ordinary course of law." (Code Civ.

---

[3] All further statutory references are to the Civil Code unless otherwise indicated.

[4] Petitioners also argue the Villages of Brimhall and Brighton Estates owners should not have been compelled to comply with the statutory nonadversarial prelitigation procedures. The order, however, did not require them to do so. It only required them to comply with the mediation and arbitration provisions of their contracts.

Proc., § 1086.) Writ review is deemed extraordinary and appellate courts are normally reluctant to grant it. (*Science Applications Internat. Corp. v. Superior Court* (1995) 39 Cal.App.4th 1095, 1100 [46 Cal.Rptr.2d 332]; *City of Half Moon Bay v. Superior Court* (2003) 106 Cal.App.4th 795, 803 [131 Cal.Rptr.2d 213] (*Half Moon Bay*).) The Supreme Court has identified general criteria for determining the propriety of writ review. "These criteria include circumstances in which 'the party seeking the writ lacks an adequate means, such as a direct appeal, by which to attain relief' or 'the petitioner will suffer harm or prejudice in a manner that cannot be corrected on appeal.' [Citation.]" (*Half Moon Bay, supra,* at p. 803.) A writ may also be granted when the petition presents an issue of first impression that is of general interest to the bench and bar. (*Valley Bank of Nevada v. Superior Court* (1975) 15 Cal.3d 652, 655 [125 Cal.Rptr. 553, 542 P.2d 977].)

■ When the petitioner may immediately appeal, his remedy is considered adequate and writ relief is precluded, unless the petitioner "can show some special reason why it is rendered inadequate by the particular circumstances of his case." (*Hogya v. Superior Court* (1977) 75 Cal.App.3d 122, 128 [142 Cal.Rptr. 325] (*Hogya*).) "Where an order is not appealable, but is reviewable only upon appeal from a later judgment, various factors must be considered in evaluating the adequacy of the appellate remedy [citation]. Such factors include, without being limited to, the expense of proceeding with trial [citation], prejudice resulting from delay [citation], inordinate pretrial expenses [citation], the possibility the asserted error might not infect the trial [citation], and the possibility the asserted error might be corrected in a lower tribunal before or during trial [citation]. A remedy is not inadequate merely because more time would be consumed by pursuing it through the ordinary course of law than would be required in the use of an extraordinary writ. [Citations.]" (*Hogya, supra,* 75 Cal.App.3d at pp. 128–129.)

The order requiring petitioners to comply with the contractual nonadversarial prelitigation procedures is not immediately appealable. (See Code Civ. Proc., § 904.1.) In the absence of writ review, petitioners will be required to comply with the order in full, and will not be able to seek review of it until after a judgment has been entered. By the time the matter reaches judgment, the issue will be moot; appellate review will not afford relief from an erroneous ruling. Petitioners will not be able to effectively challenge the order by appeal. Consequently, petitioners do not have "a plain, speedy, and adequate remedy, in the ordinary course of law." (Code Civ. Proc., § 1086.) Additionally, petitioners' writ petition presents issues of first impression, requiring interpretation of statutory provisions that have not previously been interpreted by the courts. These are issues of general interest to builders and

home buyers; resolution of the issues will provide guidance to both parties regarding the scope of their rights and obligations under the statutes, and the interplay between the statutory requirements and the alternative contractual prelitigation procedures the builder is permitted to substitute for the statutory procedures. The issues presented may escape review unless they are addressed in a writ proceeding. Accordingly, we conclude review by extraordinary writ proceeding is appropriate in this case.

## II. *Statutory Construction and Standard of Review*

█ "Well-established rules of statutory construction require us to ascertain the intent of the enacting legislative body so that we may adopt the construction that best effectuates the purpose of the law. [Citation.] We first examine the words themselves because the statutory language is generally the most reliable indicator of legislative intent. [Citation.] The words of the statute should be given their ordinary and usual meaning and should be construed in their statutory context. [Citations.] These canons generally preclude judicial construction that renders part of the statute 'meaningless or inoperative.' [Citation.]" (*Hassan v. Mercy American River Hospital* (2003) 31 Cal.4th 709, 715–716 [3 Cal.Rptr.3d 623, 74 P.3d 726].) "If the language is clear and unambiguous there is no need for construction . . . ." (*Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299].) "Statutory construction is a question of law that we review de novo." (*Syngenta Crop Protection, Inc. v. Helliker* (2006) 138 Cal.App.4th 1135, 1159 [42 Cal.Rptr.3d 191].)

## III. *Statutory Scheme*

█ In 2002, the Legislature enacted sections 895 through 945.5, which we will refer to as the "Right to Repair Act" or "the Act,"[5] "to 'specify the rights and requirements of a homeowner to bring an action for construction defects, including applicable standards for home construction, the statute of limitations, the burden of proof, the damages recoverable, a detailed prelitigation procedure, and the obligations of the homeowner.' (Legis. Counsel's Dig., Sen. Bill No. 800 (2001–2002 Reg. Sess.).).)" (*Anders v. Superior Court* (2011) 192 Cal.App.4th 579, 585 [121 Cal.Rptr.3d 465].) Chapter 2 of the

---

[5] The Act was not given an official name. Other cases have referred to it as the Right to Repair Act (*Greystone Homes, Inc. v. Midtec, Inc.* (2008) 168 Cal.App.4th 1194, 1210 [86 Cal.Rptr.3d 196]) or the "Fix-it law" (*Standard Pacific Corp. v. Superior Court* (2009) 176 Cal.App.4th 828, 830 [98 Cal.Rptr.3d 295] (*Standard Pacific*)).

Act (Chapter 2) sets out building standards, the violation of which constitutes a deficiency in construction for which the builder may be held liable to the homeowner. (§§ 896, 897.) Chapter 3 of the Act imposes obligations on the builder, including an obligation to furnish an express limited warranty. (§§ 900–907.) Chapter 4 of the Act (Chapter 4) prescribes nonadversarial prelitigation procedures a homeowner must initiate prior to bringing a civil action against the builder seeking recovery for alleged construction deficiencies. (§§ 910–938.) Chapter 5 of the Act sets out the applicable statute of limitations, the burden of proof, the damages that may be recovered, and the affirmative defenses that may be asserted; it also makes the Act binding on successors-in-interest of the original home purchaser. (§§ 941–945.5.)

█ The nonadversarial prelitigation procedure set out in Chapter 4 requires that the homeowner give written notice to the builder of the claim that the builder violated the standards of Chapter 2, describing the nature and location of the claimed violations. (§ 910.) The builder has a specified time within which to acknowledge receipt of the notice; the builder may inspect and test the claimed defects, if it elects to do so, then make a written offer to repair the defects and set a reasonable completion date. (§ 917.) The homeowner may authorize the repairs as proposed, or request repairs by a different contractor. (§ 918.) The repairs must be commenced within specified time periods, done "with the utmost diligence," and "completed as soon as reasonably possible." (§ 921.) The builder's offer to repair the defects must be accompanied by an offer to mediate the dispute if the homeowner so chooses. (§ 919.) If the builder fails to acknowledge receipt of the claim, fails to make an offer to repair, fails to complete the repair within the time specified in the repair plan, or fails to "strictly comply with this chapter within the times specified, the claimant is released from the requirements of this chapter and may proceed with the filing of an action." (§ 920; see §§ 915, 925, 930.)

Under the statutory scheme, the builder has the option of contracting for an alternative nonadversarial prelitigation procedure, in lieu of the procedure set out in Chapter 4, at the time of the initial sale of the home. Section 914, subdivision (a), provides:

"This chapter establishes a nonadversarial procedure, including the remedies available under this chapter which, if the procedure does not resolve the dispute between the parties, may result in a subsequent action to enforce the other chapters of this title. A builder may attempt to commence nonadversarial contractual provisions other than the nonadversarial procedures and

remedies set forth in this chapter, but may not, in addition to its own nonadversarial contractual provisions, require adherence to the nonadversarial procedures and remedies set forth in this chapter, regardless of whether the builder's own alternative nonadversarial contractual provisions are successful in resolving the dispute or ultimately deemed enforceable.

"At the time the sales agreement is executed, the builder shall notify the homeowner whether the builder intends to engage in the nonadversarial procedure of this section or attempt to enforce alternative nonadversarial contractual provisions. If the builder elects to use alternative nonadversarial contractual provisions in lieu of this chapter, the election is binding, regardless of whether the builder's alternative nonadversarial contractual provisions are successful in resolving the ultimate dispute or are ultimately deemed enforceable." (§ 914, subd. (a).)

Chapter 4 contains no specifics regarding what provisions the alternative nonadversarial contractual provisions may or must include.

IV. *Compliance with Section 912*

██ Petitioners contend Castle & Cooke's alternative nonadversarial prelitigation procedure is unenforceable because it failed to contain certain disclosures required by section 912. Section 912 is found within Chapter 4. Subdivisions (a), (b), (c), and (d) of section 912 require that, within 30 days of a written request, the builder provide the homeowner with copies of specified documents, including the plans, specifications, grading plans, and documents relating to maintenance, preventive maintenance, and limited warranties applicable to the homeowner's residence; the documents identified in subdivisions (b), (c), and (d) must also be provided to the homeowner in conjunction with the initial sale of the residence. (§ 912, subds. (b), (c), (d).) Section 912 further provides:

"(e) A builder shall maintain the name and address of an agent for notice pursuant to this chapter with the Secretary of State or, alternatively, elect to use a third party for that notice if the builder has notified the homeowner in writing of the third party's name and address, to whom claims and requests for information under this section may be mailed. The name and address of the agent for notice or third party shall be included with the original sales documentation and shall be initialed and acknowledged by the purchaser and the builder's sales representative. [¶] . . . [¶]

"(f) A builder shall record on title a notice of the existence of these procedures and a notice that these procedures impact the legal rights of the homeowner. This information shall also be included with the original sales documentation and shall be initialed and acknowledged by the purchaser and the builder's sales representative.

"(g) A builder shall provide, with the original sales documentation, a written copy of this title, which shall be initialed and acknowledged by the purchaser and the builder's sales representative. [¶] . . . [¶]

"(i) Any builder who fails to comply with any of these requirements within the time specified is not entitled to the protection of this chapter, and the homeowner is released from the requirements of this chapter and may proceed with the filing of an action, in which case the remaining chapters of this part shall continue to apply to the action." (§ 912, subds. (e)–(g), (i).)

Petitioners contend Castle & Cooke failed to comply with subdivisions (e), (f), and (g) of section 912, and therefore, pursuant to subdivision (i), petitioners were released from the requirements of submitting to *any* nonadversarial prelitigation procedure, including an alternative contractual procedure. They assert section 914, subdivision (a), only permitted Castle & Cooke to opt out of the nonadversarial statutory prelitigation procedures; it could not opt out of the provisions of Chapter 4 that are not part of the nonadversarial statutory prelitigation procedure. They argue the provisions of section 912 requiring the builder to make disclosures at the time of the sale of the residences to the initial buyers are not part of the nonadversarial statutory prelitigation procedure because no dispute about construction defects existed at the time of sale. Accordingly, they conclude Castle & Cooke could not opt out of the disclosure provisions of section 912. Because their purchase contracts did not contain the information called for in subdivisions (e) through (g) of section 912, petitioners contend Castle & Cooke failed to comply with that section and petitioners were thereby released from compliance with any nonadversarial prelitigation procedures.

■ Castle & Cooke contends section 912 is part of Chapter 4 and, as permitted by section 914, it elected not to use the Chapter 4 procedures in those of its contracts in which it opted to use its own contractual nonadversarial prelitigation procedure; therefore, none of Chapter 4, including section 912, applied to those contracts, and any failure to comply with section 912's disclosure provisions does not prevent Castle & Cooke from enforcing its contractual nonadversarial prelitigation procedures. We conclude a builder

who opts out of the Chapter 4 nonadversarial statutory prelitigation procedures in favor of its own contractual procedures opts out of the entirety of Chapter 4, and the disclosure provisions of section 912 do not apply to such a builder.

We reject petitioners' argument that the disclosure requirements set out in section 912 are not part of Chapter 4's nonadversarial prelitigation procedures. Section 912 specifies the builder's obligations, then provides that, if the builder fails to comply with any of the section 912 requirements, the builder "is not entitled to the protection of this chapter, and the homeowner is released from the requirements of this chapter." (§ 912, subd. (i).) Thus, it makes compliance with the disclosure provisions a prerequisite to the builder's right to enforce the statutory nonadversarial prelitigation procedures of Chapter 4. The disclosures, although made at the time of sale of the residence, are an element of the statutory nonadversarial prelitigation procedures.

We also reject petitioners' attempt to distinguish between the nonadversarial prelitigation procedures of Chapter 4 and other provisions of Chapter 4, which they contend are not part of that procedure. The Act does not separate the two, but simply refers to Chapter 4 in its entirety, and distinguishes it from the other chapters of the Act. Section 914, subdivision (a), provides that "[t]his chapter establishes a nonadversarial procedure"; if the procedure does not resolve the parties' dispute, an "action to enforce *the other chapters* of this title" may be brought. (§ 914, subd. (a), italics added.) The builder may elect "to use alternative nonadversarial contractual provisions in lieu of *this chapter.*" (*Ibid.*, italics added.) Other sections of the Act also treat the provisions of Chapter 4 as a single unit. Sections 901 through 905 allow a builder to offer an enhanced protection agreement providing greater protection than that required by Chapter 2; section 906 distinguishes a builder's election to use an enhanced protection agreement from a builder's election "to use or not use the provisions of *Chapter 4*" and states that "[t]he decision to use or not use *Chapter 4* (commencing with Section 910) is governed by the provisions of that chapter." (§ 906, italics added.) If the builder fails to acknowledge the notice of the homeowner's construction defect claim, to request an inspection, to offer to make repairs, to complete the repairs within the time set, or to "otherwise strictly comply with *this chapter* within the times specified" (§ 920, italics added), "the homeowner is released from the requirements of *this chapter* and may proceed with the filing of an action," but "the standards set forth in *the other chapters* of this title shall continue to apply to the action" (§§ 915, 925, italics added).

The Act specifies that certain provisions of Chapter 4 apply beyond that chapter, by expressly making them applicable to "this title." Section 911, subdivision (a), for example, defines the term "builder" "[f]or purposes of this title." Sections 936 through 938 explain the application of "this title" and "the other chapters of this title." Section 912, in contrast, does not provide that the disclosure provisions, which petitioners contend apply even when the builder opts out of the Chapter 4 nonadversarial prelitigation procedures, apply to "this title."

If the Legislature had intended the section 912 disclosure provisions to apply to all builders, even those that elect to use contractual nonadversarial prelitigation procedures, it could have made the requirements applicable to all builders by locating them in a section outside of Chapter 4. Alternatively, it could have specified in section 912 that the disclosure requirements apply to "this title" or "regardless of whether the builder elects to use alternative contractual nonadversarial prelitigation procedures." It did neither. It included the disclosure provisions in Chapter 4, then authorized builders to opt out of Chapter 4.

■ When the statutory procedures apply, a home buyer may not be aware of the Right to Repair Act and the procedures it includes unless some reference to them is included in the purchase documents. Accordingly, section 912 requires that the documents reflecting the purchase contain information about the Act and the prelitigation procedures contained in Chapter 4. If the builder fails to include this information, the home buyer is not bound by the procedures of Chapter 4. (§ 912, subd. (i).) If, however, the builder elects to use alternative contractual nonadversarial prelitigation procedures, those procedures will not become part of the bargain unless they are set out in the contractual documents and agreed to by the purchaser. Section 914 requires that the contract reflect the builder's election to follow its own contractual procedures in lieu of the statutory procedures. (§ 914, subd. (a).) Thus, the buyer will have notice of the contractual procedures and of the builder's election to follow them in lieu of the statutes because the builder's procedures and the election are part of the contract to which the buyer agrees. Accordingly, there is a reasonable basis for distinguishing between builders who elect to follow the statutory procedures and those who elect to follow their own alternative contractual procedures, which may explain why section 912 was not made applicable to both groups.

Petitioners cite *Standard Pacific, supra,* 176 Cal.App.4th 828 for the proposition that the disclosure provisions of section 912 are mandatory for all builders, even those that opt out of the statutory procedures. In *Standard Pacific,* however, only the statutory nonadversarial prelitigation procedures were in issue; there was no contention the builder had elected to use an

alternative contractual procedure. The question was whether the builder had the initial burden of demonstrating it had complied with section 912 and the homeowner was therefore bound to follow the statutory procedures, or whether the homeowner had to show the builder's noncompliance with section 912 to establish the homeowner was released from the statutory procedures. The homeowners argued that the builder had to prove it had "opted in" to the statutory nonadversarial prelitigation procedures by complying with the disclosure requirements of section 912, before the homeowners were required to comply with section 910's requirement that they give notice to the builder of their construction defect claims. The court disagreed, concluding the use of the term "shall" made the provisions of section 912 mandatory. (*Standard Pacific*, at p. 832.) The court stated: "The Legislature was concerned with affording certain information and protection to homeowners, and there is nothing in Civil Code section 912 (or anywhere else, as far as we can see) that permits a builder to choose not to provide that information and protection." (*Id.* at p. 833.) It concluded that, "if a homeowner files suit without having followed the prelitigation procedures, it is incumbent upon the homeowner to factually establish that he has been 'released' from this obligation due to the builder's failure to comply with section 912." (*Id.* at p. 834, fn. omitted.)

██ The *Standard Pacific* court did not discuss or decide whether a builder is required to comply with section 912 when it has elected to follow alternative contractual nonadversarial prelitigation procedures in lieu of the statutory procedures, as permitted by section 914. "It is axiomatic that cases are not authority for propositions not considered." (*Environmental Charter High School v. Centinela Valley Union High School Dist.* (2004) 122 Cal.App.4th 139, 150 [18 Cal.Rptr.3d 417].) Thus, *Standard Pacific* does not support petitioners' argument that Castle & Cooke was required to comply with section 912, despite its election to use alternative contractual nonadversarial prelitigation procedures.

The asserted failure to strictly comply with section 912 did not bar enforcement of Castle & Cooke's alternative contractual nonadversarial prelitigation procedures.

## V. *Limitation on Damages*

Petitioners contend some of their purchase contracts contain limitations on the damages they may recover, in violation of sections 901 and 944. They seem to contend this provision for a limitation on damages should invalidate the entire alternative nonadversarial prelitigation repair procedure. Section 944 prescribes the damages that may be recovered on a construction defect claim made pursuant to the Act. "If a claim for damages is made under this title, the

homeowner is only entitled to damages for the reasonable value of repairing any violation of the standards set forth in this title, the reasonable cost of repairing any damages caused by the repair efforts, the reasonable cost of repairing and rectifying any damages resulting from the failure of the home to meet the standards, the reasonable cost of removing and replacing any improper repair by the builder, reasonable relocation and storage expenses, lost business income if the home was used as a principal place of a business licensed to be operated from the home, reasonable investigative costs for each established violation, and all other costs or fees recoverable by contract or statute." (§ 944.)

Petitioners contend section 901 prohibits any contractual limitation on that measure of damages. "A builder may, but is not required to, offer greater protection or protection for longer time periods in its express contract with the homeowner than that set forth in Chapter 2 (commencing with Section 896). A builder may not limit the application of Chapter 2 (commencing with Section 896) or lower its protection through the express contract with the homeowner. This type of express contract constitutes an 'enhanced protection agreement.' " (§ 901.)

The contracts of some of the petitioners in the Brighton Place, Brighton Parks, and Brighton Village developments[6] provide: "Seller's liability under this agreement shall be limited to the amount of diminution in the value of the property and residence which may occur as a result of any breach of this agreement." They contain the parties' waiver of the remedies of specific performance and related restraining orders. They also provide that "seller shall not be liable for buyer's loss of profits, business goodwill, or other consequential or incidental damages," and "buyer has accepted this restriction to recover consequential damages, and the use of diminution of value as the only measure of damages as a result of buyer's [*sic*] breach or negligence, as part of buyer's bargain with seller."

Assuming, without deciding, that petitioners' interpretation is correct and the effect of section 901 is to prohibit a builder from limiting the damages recoverable by a homeowner under section 944 (even though § 901 refers only to Ch. 2 and § 944 is located in ch. 5 of the Act), we conclude that the contractual damages limitation does not invalidate the entire contract or the entire contractual nonadversarial prelitigation procedure.

---

[6] These provisions are found in the purchase contracts for Brighton Place, presented in the trial court as exhibits G2, G5, G7, G8, and G13, the purchase contracts for Brighton Parks, presented as exhibits H1 to H4, and the purchase contracts for Brighton Village, presented as exhibits I1 to I4 to Castle & Cooke's motion to compel petitioners to comply with the prelitigation nonadversarial procedures contained in the contracts. The purchase agreements for Brighton Place that were presented as exhibits G1, G3, G4, G6, G9, G10, G11, and G12 do not contain any limitation on damages.

The contracts contain severability clauses, providing: "If any provision of this Agreement shall be held to be invalid, illegal or unenforceable, the validity of other provisions of this Agreement shall in no way be affected thereby." These clauses evidence the parties' intent that, to the extent possible, the valid provisions of the contracts be given effect, even if some provision is found to be invalid or unlawful.

 "Where a contract has several distinct objects, of which one at least is lawful, and one at least is unlawful, in whole or in part, the contact is void as to the latter and valid as to the rest." (§ 1599.) "By its terms, [section 1599] applies even—indeed, only—when the parties have contracted, in part, for something illegal. Notwithstanding any such illegality, it preserves and enforces any lawful portion of a parties' contract that feasibly may be severed." (*Marathon Entertainment, Inc. v. Blasi* (2008) 42 Cal.4th 974, 991 [70 Cal.Rptr.3d 727, 174 P.3d 741], fn. omitted (*Marathon*).) "Two reasons for severing or restricting illegal terms rather than voiding the entire contract appear implicit in case law. The first is to prevent parties from gaining undeserved benefit or suffering undeserved detriment as a result of voiding the entire agreement—particularly when there has been full or partial performance of the contract. [Citations.] Second, more generally, the doctrine of severance attempts to conserve a contractual relationship if to do so would not be condoning an illegal scheme. [Citations.] The overarching inquiry is whether ' "the interests of justice . . . would be furthered" ' by severance. [Citation.]" (*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 123–124 [99 Cal.Rptr.2d 745, 6 P.3d 669] (*Armendariz*), abrogated in part on another ground in *AT&T Mobility LLC v. Concepcion* (2011) 563 U.S. ___ [179 L.Ed.2d 742, 131 S.Ct. 1740].)

"The doctrine [of severability] is equitable and fact specific, and its application is appropriately directed to the sound discretion of the . . . trial courts in the first instance." (*Marathon, supra*, 42 Cal.4th at p. 998.) "Courts are to look to the various purposes of the contract. If the central purpose of the contract is tainted with illegality, then the contract as a whole cannot be enforced. If the illegality is collateral to the main purpose of the contract, and the illegal provision can be extirpated from the contract by means of severance or restriction, then such severance and restriction are appropriate." (*Armendariz, supra*, 24 Cal.4th at p. 124.) "California cases take a very liberal view of severability, enforcing valid parts of an apparently indivisible contract where the interests of justice or the policy of the law would be furthered." (*Adair v. Stockton Unified School Dist.* (2008) 162 Cal.App.4th 1436, 1450 [77 Cal.Rptr.3d 62].)

The central purpose of the contracts between petitioners and Castle & Cooke was the sale and purchase of real property, a lawful purpose. The

contracts incorporated by reference provisions of the "Declaration of Covenants, Conditions and Restrictions" applicable to the developments, which were designed to resolve disputes between the parties without resort to litigation. The contractual provisions Castle & Cooke seeks to enforce grant them an opportunity to attempt to repair any alleged construction defects before the homeowner may seek remedies by way of arbitration, judicial reference, or court action. These dispute resolution provisions serve a lawful purpose.

The contractual provision petitioners contend served an unlawful purpose was the provision in some of the contracts purporting to limit the damages recoverable by petitioners in the event of a breach of contract by Castle & Cooke. This allegedly unlawful provision is separate from and independent of the notice-and-opportunity-to-repair provisions. It is collateral to the main purpose of the contract, and may be severed from it without interfering with enforcement of the lawful provisions of the contract. The contractual provisions for the purchase of the properties by petitioners and the procedures for giving Castle & Cooke notice of alleged construction defects and an opportunity to repair them may be enforced without giving effect to the provisions limiting damages. This approach preserves the contractual relationship and serves the interests of justice better than invalidating the entire contract or even the procedures for notice and an opportunity to repair. The interests of justice would be furthered by enforcing the lawful contractual provisions to which the parties agreed, while severing and rendering unenforceable only the provisions found to be unlawful.

Consequently, we find no abuse of discretion in the trial court's decision to enforce the provisions for notice to the builder and an opportunity to repair, despite petitioners' claim that the contract contains an unlawful limitation on the damages recoverable by petitioners on their construction defect claims.[7]

---

[7] Although petitioners ask this court to issue a writ of mandate requiring the trial court to deny Castle & Cooke's motion in its entirety, they have presented no separate argument challenging the propriety of the portion of the order requiring them to comply with the contractual provisions for mediation, arbitration, and judicial reference. We note that the Right to Repair Act was not intended to affect contractual provisions for alternative dispute resolution. Section 914, subdivision (b), provides: "Nothing in this title is intended to affect existing statutory or decisional law pertaining to the applicability, viability, or enforceability of alternative dispute resolution methods, alternative remedies, or contractual arbitration, judicial reference, or similar procedures requiring a binding resolution to enforce the other chapters of this title or any other disputes between homeowners and builders. Nothing in this title is intended to affect the applicability, viability, or enforceability, if any, of contractual arbitration or judicial reference after a nonadversarial procedure or provision has been completed."

## *DISPOSITION*

The petition for writ of mandate is denied. Real party in interest Castle & Cooke is to recover its costs in this writ proceeding.

Wiseman, J., and Kane, J., concurred.

A petition for a rehearing was denied January 9, 2012, and petitioners' petition for review by the Supreme Court was denied March 28, 2012, S199565. Kennard, J., was of the opinion that the petition should be granted.