Filed 4/7/23

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| BLAINE NICKSON, | D080914 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. CVSW2107735) |
| SHEMRAN, INC., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Riverside County, Angel M. Bermudez, Judge. Reversed with directions.

Law Offices of Eli Mayer Kantor, Eli Mayer Kantor and Jonathan D. Kantor for Defendant and Appellant.

Lawyers for Justice, Edwin Aiwazian, Tara Zabehi and Travis Joseph Maher for Plaintiff and Respondent.

Shemran, Inc. (Shemran) appeals the denial of its motion to compel arbitration of a Labor Code Private Attorneys General Act of 2004 (PAGA) (Lab. Code, § 2698 et seq.) action brought by a former employee, Blaine Nickson.[1]  The motion was based on Nickson's agreement to arbitrate all individual claims arising from his employment (the Agreement).  At the time of the trial court's ruling, a predispute agreement to arbitrate PAGA claims was unenforceable under *Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348 (*Iskanian*).  But during the pendency of this appeal, the United States Supreme Court decided *Viking River Cruises, Inc. v. Moriana* (2022) 142 S.Ct. 1906 (*Viking River*), holding that the Federal Arbitration Act (FAA) (9 U.S.C., § 1 et seq.) preempts *Iskanian* in part.  The issue now is whether the trial court's ruling survives *Viking River*.  We hold it does not.  Nickson's individual PAGA claims are arbitrable.

*Viking River* aside, Nickson further contends the Agreement is unenforceable because it is unconscionable.  But as we explain, the Agreement delegates to the arbitrator the exclusive authority to decide that point.

The final issue is what to do with Nickson's nonindividual PAGA claims, since only his individual ones are arbitrable.  In *Viking River*, purporting to apply California law, the United States Supreme Court stated that a plaintiff lacks standing to prosecute nonindividual PAGA claims when their individual ones are ordered to arbitration.  (*Viking River, supra*, 142 S.Ct. at p. 1925.)  Shemran contends we should, therefore, dismiss Nickson's nonindividual PAGA claims.  California courts, however, are the final word on the meaning and application of this state's statutes.  (See *Beal v. Missouri*

---

[1]     Undesignated statutory references are to the Labor Code.

*P.R. Corp.* (1941) 312 U.S. 45, 50 (*Beal*).)[2]  In *Kim v. Reins* (2020) 9 Cal.5th 73, 80, the California Supreme Court held that employees do *not* lose PAGA standing even after settling and dismissing individual claims.  Indeed, relying on *Kim*, we recently held that an employee whose individual PAGA claims are time-barred still has standing to pursue nonindividual claims. (*Johnson v. Maxim Healthcare Services, Inc.* (2021) 66 Cal.App.5th 924, 929 (*Johnson*).)  Pending further guidance from the California Supreme Court,[3] we are compelled to follow *Kim* and hold that Nickson's nonindividual PAGA claims should not be dismissed.

FACTUAL AND PROCEDURAL BACKGROUND

In 2021, Nickson filed a single-count PAGA complaint against Shemran and "Barons Market," a fictitious business name under which it operates grocery stores.  Nickson alleged that he was "an hourly-paid, non-exempt employee" and defendants violated certain wage-and-hour provisions of the Labor Code. He sought civil penalties on behalf of himself and other aggrieved employees.

---

[2]  Subject, of course, to review by the United States Supreme Court, but only if that interpretation is challenged on federal constitutional grounds. (*Beal, supra,* 312 U.S. at p. 50.)

[3]  The California Supreme Court has granted review in the unpublished opinion of *Adolph v. Uber Technologies* (Apr. 11, 2022, G059860, G060198), on July 20, 2022, S274671, to address "[w]hether an aggrieved employee who has been compelled to arbitrate claims under the Private Attorneys General Act (PAGA) that are 'premised on Labor Code violations actually sustained by' the aggrieved employee [citations] maintains statutory standing to pursue "PAGA claims arising out of events involving other employees."

Shemran promptly moved to compel arbitration, supported by an authenticated copy of the Agreement. It provides for the "resolution by binding arbitration" of Nickson's individual claims:

> "Barons Market and I mutually consent to the resolution by binding arbitration of all claims or controversies . . . that Barons Market may have against me or that I may have against Barons Market . . . ." [¶] . . . [¶]

> "All claims that are covered by this Agreement can only be brought . . . on an individual basis. . . . I agree to waive any right to join or consolidate claims with others, or to make any claims as representative of a class, a member of a class, or in a private attorney general capacity."

After conducting an unreported hearing, the trial court denied the motion, citing *Iskanian*, *supra*, 59 Cal.4th 348 as "controlling law."

DISCUSSION

A. *PAGA*

Before 2004, the California Labor and Workforce Development Agency (LWDA) was responsible for collecting civil penalties for labor law violations. The Legislature found, however, that the LWDA lacked sufficient resources to keep pace with the sheer number and gravity of offenses. As a solution, PAGA was enacted to empower aggrieved employees to act as private attorneys general to prosecute and collect civil penalties on the State's behalf. (See *Arias v. Superior Court* (2009) 46 Cal.4th 969, 980 (*Arias*).)

PAGA does not create substantive rights. It " ' "is simply a procedural statute allowing an aggrieved employee to recover civil penalties—for Labor Code violations—that otherwise would be sought by state labor law enforcement agencies." ' " (*Bautista v. Fantasy Activewear, Inc.* (2020) 52 Cal.App.5th 650, 657.) Seventy-five percent of the penalties recovered go to the LWDA; the remainder is disbursed to the aggrieved employees. (§ 2699,

4

subd. (i).)  A prevailing plaintiff is also entitled to reasonable attorney's fees and costs.  (*Id.*, subd. (g)(1).)  Only an " 'aggrieved employee' " has standing to prosecute a PAGA action, which the statute defines as "any person who was employed by the alleged violator and against whom one or more of the alleged violations was committed."  (§ 2699, subd. (c).)

In PAGA parlance, Labor Code violations suffered by the plaintiff are "individual claims."  (See *Viking River*, *supra*, 142 S.Ct. at p. 1916.)  The statute, however, allows an aggrieved employee to join claims for offenses committed against fellow employees.  These are called "non-individual" claims.  (*Ibid.*)

B.    Iskanian

In *Iskanian*, the California Supreme Court considered whether an employer could limit its PAGA exposure by contract.  The answer was no. An employee's right to bring a PAGA action "is unwaivable."  (*Iskanian*, *supra*, 59 Cal.4th at p. 383.)  This is because an employee's agreement to waive their right to bring a PAGA action would "disable one of the primary mechanisms for enforcing the Labor Code," and as such was against public policy.  (*Iskanian*, at p. 383.)[4]

The *Iskanian* court also considered whether the FAA preempted its rule against PAGA waivers.  It found no preemption because "the FAA aims to ensure an efficient forum for the resolution of *private* disputes, whereas a PAGA action is a dispute between an employer and the state."  (*Iskanian*, *supra*, 59 Cal.4th at p. 384.)  In a PAGA action, "the state is the real party in interest" and "[t]here is no indication that the FAA was intended to govern

---

[4]    "All contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own . . . violation of law, whether willful or negligent, are against the policy of the law."  (Civ. Code, § 1668.)

disputes between the government in its law enforcement capacity and private individuals." (*Iskanian*, at p. 385.)

Additionally, *Iskanian* rejected the employer's argument that the particular waiver it drafted should be upheld because it only waived nonindividual PAGA claims and preserved the employee's right to arbitrate individual ones. (*Iskanian*, *supra*, 59 Cal.4th at pp. 383–384.) Appellate courts interpreted this aspect of *Iskanian* "as prohibiting splitting PAGA claims into individual and nonindividual components to permit arbitration of the individual claims." (*Lewis v. Simplified Labor Staffing Solutions, Inc.* (2022) 85 Cal.App.5th 983, 993.)

Based on *Iskanian*, California courts refused to enforce predispute agreements to arbitrate PAGA claims. The rationale was that an employee cannot be "aggrieved" before a violation occurs. And until the employee is "aggrieved," they have no authority to act as the State's agent. As one court explained, "[A]n agreement to arbitrate the PAGA claims would not be enforceable unless it was made *after* the former employee became a PAGA authorized aggrieved employee (i.e., an agent of the state)." (*Herrera v. Doctors Medical Center of Modesto* (2021) 67 Cal.App.5th 538, 550, fn. 3.)

This rule and the logic behind it seemed sound—until *Viking River*.

C.   Viking River

In *Viking River*, the United States Supreme Court considered whether the FAA preempts California's rule invalidating contractual waivers of the right to assert PAGA claims.[5] (*Viking River*, *supra*, 142 S.Ct. at p. 1913.)

---

[5]   Under the FAA, a "written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising . . . shall be valid, irrevocable, and enforceable . . . ." (9 U.S.C., § 2.) The statute has been interpreted to embody "a liberal federal

The court's analysis began by explaining that PAGA actions are "representative" in two distinct ways. First, they are all representative in the sense that the aggrieved employee represents the State. (*Viking River*, at p. 1916.) Second, some PAGA actions are also predicated on Labor Code violations that the defendant allegedly committed against other aggrieved employees (i.e., not the plaintiff). (See *Viking River*, at p. 1916.) Because the statute allows joinder of nonindividual claims, a PAGA action is also "representative" in the sense that the named plaintiff represents fellow aggrieved employees.

As discussed above, under *Iskanian* an employee cannot waive the right to bring a PAGA action. In *Viking River*, the court concluded that because the FAA is concerned with the forum in which disputes are resolved, not with the substantive law that resolves them, it did *not* preempt this rule. (*Viking River*, *supra*, 142 S.Ct. at p. 1919.) Thus, even after *Viking River*, a contractual waiver of the right to prosecute PAGA claims is unenforceable as against California public policy.

However, *Iskanian*'s secondary rule—prohibiting a PAGA action from being split into separate individual and nonindividual actions—is procedural. *Viking River* holds that the FAA preempts this rule. If splitting were allowed, the court reasoned, parties might prefer to resolve higher-stakes nonindividual claims in a court, where appellate review is available to correct errors, but to arbitrate lower-stakes individual claims. (*Viking River*, *supra*, 142 S.Ct. at p. 1924.) But *Iskanian*'s no-splitting rule "circumscribes the freedom of parties to determine 'the issues subject to arbitration' and the 'rules by which they will arbitrate'" by imposing on them an all-or-nothing

policy favoring arbitration." (*Moses H., Cone Memorial Hosp. v. Mercury Constr. Corp.* (1983) 460 U.S. 1, 24.)

choice: arbitrate both individual and nonindividual claims or forego arbitration entirely. (*Viking River*, at p. 1923.) According to the court, "This combination of standing to act on behalf of a sovereign and mandatory freeform joinder allows plaintiffs to unite a massive number of claims in a single-package suit" and " 'arbitration is poorly suited to the higher stakes' of massive-scale disputes of this kind." (*Ibid.*)

As a result of these two aspects of *Viking River*, and assuming the agreement is otherwise enforceable: (1) an employee's waiver of the right to bring a PAGA action is unenforceable; however, (2) where a predispute agreement provides for arbitrating only individual PAGA claims, that portion of the action may be split off and compelled to arbitration, while the remaining nonindividual claims remain for disposition in court.

Here, the Agreement purports to waive Nickson's right "to make any claims . . . in a private attorney general capacity." That waiver is unenforceable as a matter of state law. (*Viking River*, *supra*, 142 S.Ct. at pp. 1924–1925.)

The Agreement, however, contains a severability clause stating, "If any provision of this Agreement is determined to be void or otherwise unenforceable, such determination shall not affect the validity of the remainder of the Agreement." Accordingly, Shemran is entitled to enforce other terms of the Agreement, unless they are invalid for some independent reason. (See *Viking River*, *supra*, 142 S.Ct. at p. 1925 [applying severability clause].)[6]

---

[6] A severability clause "evidence[s] the parties' intent that, to the extent possible, the valid provisions of the contract[ ] be given effect, even if some provision is found to be invalid or unlawful." (*Baeza v. Superior Court* (2011) 201 Cal.App.4th 1214, 1230.) Nickson contends, however, that the provision here should be ignored because it does "not *specifically* permit severance of

In defining the scope of arbitrable claims, the Agreement provides that only individual PAGA claims can be arbitrated: "All claims that are covered by this Agreement can only be brought by me . . . on an individual basis." Under *Viking River*, this is enforceable. Therefore, the order denying Shemran's motion to compel arbitration is incorrect. Nickson's individual PAGA claims can be arbitrated, while his nonindividual PAGA claims cannot—unless the Agreement is unenforceable on some other ground(s).

D.   *Unconscionability*

Under the FAA, generally applicable contract defenses (such as unconscionability) may invalidate an arbitration agreement if it "does not interfere 'with fundamental attributes of arbitration.'" (*Prima Donna Development Corp. v. Wells Fargo Bank, N.A.* (2019) 42 Cal.App.5th 22, 37.) Attempting to sidestep the impact of *Viking River*, Nickson's principal argument on appeal is that the Agreement is still unenforceable because it is "is rife with provisions that are procedurally and substantively unconscionable." He explains that although he raised this issue in the trial court, it was not considered because the motion was denied on other grounds (i.e., *Iskanian*).[7]

---

the unlawful portion of the PAGA waiver." (Italics added.) But the severability language in this case is even broader in scope than the one applied in *Viking River*, which provided that if the "waiver provision" was invalid, any portion of the waiver that remains valid would be enforced in arbitration. (*Viking River*, *supra*, 142 S.Ct. at p. 1925.) According to the plain and unambiguous terms of the severability provision here, the invalidity of the PAGA waiver does not affect the validity of the remainder of the Agreement.

7      The record on appeal does not contain Nickson's opposition to the motion to compel arbitration, so we are unable to confirm his claim to have raised the issue below. Nor can we determine what unconscionability

Nickson asks us to remand to the trial court to decide whether the Agreement is unconscionable. Alternatively, he urges us to decide the issue as a matter of law for the first time on appeal. We decline both requests because the parties agreed that the arbitrator—not the court—would decide enforceability issues.[8]

The Agreement contains what is commonly called a "delegation clause." It provides that "[t]he Arbitrator, and not any . . . court" has "exclusive authority to resolve . . . disputes" involving "enforceability" of the Agreement, including but not limited to, any claim that all or any part of this Agreement is void or voidable." The plain meaning requires the issue of unconscionability to be decided in arbitration. Case law points in that direction too.

_____

arguments he actually made in the trial court and would have, therefore, preserved for appeal. Of course, Shemran was required to include Nickson's opposition in the appellant's appendix. (Cal. Rules of Court, rule 8.124(b)(1)(B) [The appellant's appendix "must contain . . . any item that the appellant should reasonably assume the respondent will rely on"].) But Nickson was not without remedies. He could have included the opposition in a respondent's appendix. (*Id.,* rule 8.124(b)(5).) Alternatively, a timely motion to augment could have been filed. (*Id.,* rule 8.155(a)(1)(A).) He did neither. Nevertheless, because we resolve the unconscionability issue based on the undisputed terms of the Agreement, we consider the point despite Nickson's arguable forfeiture.

8  Although the parties' briefs did not address whether unconscionability was a matter delegated exclusively to the arbitrator to decide, more than a month before oral argument we asked counsel to be prepared to discuss it. At oral argument Nickson's attorney lamented being deprived of an opportunity to brief the issue. In response to a question from the bench asking if he was requesting leave to file a supplemental brief, counsel said, "Briefing may be helpful," and would give his client "a fair shake." We gave counsel 10 days to submit a request to file a supplemental brief on the unconscionability issue that explained what additional arguments he intended to address. The 10 days has now elapsed without a request being filed.

The United States Supreme Court considered an identically worded provision in *Rent-A-Center, West, Inc. v. Jackson* (2010) 561 U.S. 63 (*Rent-A-Center*). There, the agreement gave the arbitrator " 'exclusive authority to resolve any dispute relating to the . . . enforceability . . . of this Agreement including, but not limited to any claim that all or any part of this Agreement is void or voidable.' " (*Id.* at p. 66.) In seeking to avoid arbitration, the plaintiff asserted the entire agreement was unconscionable, but he did not challenge the delegation provision in particular. (*Id.* at pp. 71–73.) The court first considered whether the parties' intent to submit enforcement issues exclusively to the arbitrator was " 'clear and unmistakable.' " (*Id.* at p. 69, fn. 1.) It was. (*Ibid.*) Next, the court concluded that because the delegation clause was severable from the remainder of the arbitration agreement, the issue of unconscionability was required to be litigated in arbitration and not in court.[9] (*Rent-A-Center,* at pp. 72–76.)

Thus, under *Rent-A-Center*, "it is important to determine whether the party is making a specific challenge to the enforceability of the delegation clause or is simply arguing that the agreement as a whole is unenforceable. If the challenge is to the agreement as a whole—even if it applies equally to

_____

[9]     There is a practical necessity for distinguishing between a claim that (1) the entire agreement is unconscionable, and (2) the delegation clause in particular is unconscionable. If the arbitrator concludes that the agreement is unconscionable, then the entire agreement, *including the delegation clause,* would be unenforceable—a finding that would undermine the arbitrator's authority to make that finding in the first place. "For this reason, courts have treated the delegation clause as a separate agreement to arbitrate solely the issues of enforceability. In other words, courts have *separately* enforced an enforceable delegation clause; thus, it has been held that whether the arbitration agreement as a whole is ultimately held to be unenforceable will have no bearing on the enforcement of the delegation clause itself . . . ." (*Malone v. Superior Court* (2014) 226 Cal.App.4th 1551, 1559 (*Malone*).)

11

the delegation clause—the delegation clause is . . . enforced . . . [and] the arbitrator, not the court, will determine whether the agreement is enforceable." (*Malone, supra*, 226 Cal.App.4th at pp. 1559–1560.)

Here, as in *Rent-A-Center*, the Agreement clearly and unmistakably assigns the enforceability issue to the arbitrator. It states that the arbitrator "and not any" court, "shall have exclusive authority" to resolve disputes regarding enforceability of the Agreement. In *B.D. v. Blizzard Entertainment, Inc.* (2022) 76 Cal.App.5th 931, 957, this court held that nearly identical language (" '[t]he arbitrator shall determine the scope and enforceability of this arbitration agreement' ") " 'clearly and unmistakably states' " that the arbitrator has authority to decide " 'all issues of arbitrability.' " (*Ibid.*) The same conclusion is compelled here.

Moreover, Nickson's claim of unconscionability is directed against the entire Agreement, not the delegation clause in particular. He contends the Agreement is procedurally unconscionable because (1) it was presented on a take-it-or-leave-it basis; (2) he was required to sign it to begin employment; (3) it was provided to him not as a stand-alone document, but as part of his "on-boarding procedure"; and (4) the Agreement claims to incorporate AAA arbitration rules but did not attach them. Likewise, the substantive attacks are directed to the Agreement as a whole, not specifically the delegation clause. Nickson contends, for example, that the "arbitration agreement" is substantively unconscionable because it (1) purports to relinquish "unwaivable statutory rights"; (2) gives the arbitrator discretion to deny an award of attorney's fees in the event he prevails, whereas the Labor Code gives a court no such discretion; and (3) does not provide for judicial review of the arbitrator's decision.

We conclude, therefore, that this case falls squarely within the *Rent-A-Center* rule. Here, as in that case, a delegation clause is contained in an arbitration agreement. In both cases, the employee has challenged the enforceability of the agreement as a whole, not the delegation clause in particular. Finally, as in *Rent-A-Center*, the delegation to the arbitrator to decide enforceability is clear and unmistakable. Thus, it is for the arbitrator, not a court, to determine whether the Agreement is unconscionable.

E.    *The Nonindividual Claims*

As explained, Nickson's individual PAGA claims must be arbitrated. But what about his nonindividual claims? In a portion of the *Viking River* opinion that has been characterized as "dicta,"[10] the Supreme Court concluded that "PAGA provides no mechanism to enable a court to adjudicate non-individual PAGA claims once an individual claim has been committed to a separate proceeding." (*Viking River*, *supra*, 142 S.Ct. at p. 1925.) The court reasoned that under PAGA, "a plaintiff can maintain non-individual PAGA claims in an action only by virtue of also maintaining an individual claim in that action." (*Ibid*.) Thus, "[w]hen an employee's own dispute is pared away from a PAGA action, the employee is no different from a member of the general public, and PAGA does not allow such persons to maintain suit." (*Ibid*.) Accordingly, *Viking River* concluded, "the correct course is to dismiss [the plaintiff's] remaining claims."[11] (*Viking River*, at p. 1925.)

---

10    *Mills v. Facility Solutions Group* (2022) 84 Cal.App.5th 1035, 1064.

11    The Chief Justice, together with Justices Barrett and Kavanaugh, declined to support the dismissal of nonindividual PAGA claims. (*Viking River*, *supra*, 142 S.Ct. at p. 1926 (conc. opn. of Barrett, J.) [Justice Barrett concurring in part and in the judgment, declining to join part IV, which "addresses disputed state-law questions as well as arguments not pressed or passed upon in this case"].) As Justice Sotomayor made clear, the Supreme

13

Nickson contends *Viking River'*s interpretation of state law is both not binding and incorrect. Not surprisingly, Shemran sees it differently. We conclude Nickson is correct.

When "a cause of action is based on statute, standing rests on the provision's language, its underlying purpose, and the legislative intent." (*Kim*, *supra*, 9 Cal.5th at p. 83.) "The plain language of section 2699(c) has only two requirements for PAGA standing." (*Kim*, at p. 83.) First, the plaintiff must be an "aggrieved employee," which the statute defines as someone " 'who was employed by the alleged violator.' " (*Id*. at pp. 83–84.) Second, plaintiff must be a person " 'against whom one or more of the alleged violations was committed.' " (*Ibid*.)

The court in *Kim* determined that an employee who settled or dismissed their individual PAGA claim retained standing to prosecute nonindividual PAGA claims. As the court explained, PAGA standing is defined by statute "in terms of violations, not injury." (*Kim*, *supra*, 9 Cal.5th at p. 84.) Thus, the plaintiff "became an aggrieved employee, and had PAGA standing, when one or more Labor Code violations were committed against him. [Citation.] Settlement did not nullify these violations." (*Kim*, at p. 84.) The court found that "[n]othing in the legislative history suggests the Legislature intended to make PAGA standing dependent on the existence of an unredressed injury, or the maintenance of a separate, unresolved claim." (*Kim*, at pp. 90–91.)

We followed *Kim* in precisely this manner when deciding *Johnson*, *supra*, 66 Cal.App.5th 924. There, the plaintiff alleged a single cause of

---

Court was opining on what it conceded could be a mistaken view of California law. (*Viking River*, at p. 1925 (conc. opn. of Sotomayor, J.) ["[I]f this Court's understanding of state law is wrong, California courts, in an appropriate case, will have the last word."].)

action under PAGA. The employer demurred on standing grounds, asserting the plaintiff lacked standing because her individual PAGA claims were time-barred. Rejecting the employer's argument, we explained:

> "Johnson alleged she is employed by [defendant] and that she personally suffered at least one Labor Code violation on which the PAGA claim is based. [Citations.] The fact that Johnson's individual claim may be time-barred does not nullify the alleged Labor Code violations nor strip Johnson of her standing to pursue PAGA remedies." (*Johnson*, at p. 930.)

Thus, *Kim* teaches that on the issue of standing—whether individual PAGA claims are severed from nonindividual ones is not even relevant, much less decisive. As *Kim* explained, "the Legislature did not intend to link PAGA standing to the maintenance of individual claims when such claims have been alleged" and "[t]his expansive approach to standing serves the state's interest in vigorous enforcement." (*Kim, supra*, 9 Cal.5th at p. 85.) We therefore conclude that Nickson has standing to litigate nonindividual PAGA claims in the superior court notwithstanding his agreement to arbitrate individual PAGA claims. (Accord *Piplack v. In-N-Out Burgers* (2023) 88 Cal.App.5th 1281, 1292 [following *Viking River* on FAA preemption, but *Kim* on PAGA standing for nonindividual claims]; *Galarsa v. Dolgen California, LLC* (2023) 88 Cal.App.5th 639, 652–655 [same].)[12]

---

[12] A federal district court has reached the same conclusion, followed *Kim*, and like us respectfully declined to apply the contrary dicta in *Viking River*. (*Shams v. Revature LLC* (N.D.Cal., 2022, No. 22-cv-01745-NC) 2022 U.S. Dist. Lexis 149682.)

## DISPOSITION

The order denying the motion to compel arbitration is reversed with directions to enter a new order granting the motion, but only with respect to Nickson's individual PAGA claims. The nonindividual PAGA claims remain pending in the superior court. We leave management of the superior court litigation during the pendency of arbitration to the trial court's sound discretion.

In the interests of justice, each party shall bear their own costs on appeal.

DATO, J.

WE CONCUR:

HUFFMAN, Acting P. J.

BUCHANAN, J.