Filed 11/17/25

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN


| | |
|---|---|
| ROBERT PRUCHNIK, | B330338 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. JCCP4621; BC687726) |
| v. | |
| JCCP4621 COMMON BENEFIT COMMITTEE, | |
| Defendant and Respondent. | |


APPEAL from an order of the Superior Court of Los Angeles County, Lawrence P. Riff, Judge.  Affirmed.

Norman Shaw for Plaintiff and Appellant.

Kristensen Law Group and John P. Kristensen for Respondent JCCP4621 Common Benefit Committee.

_____

After Robert Pruchnik[1] was in a car accident in which his wife died, he sued Toyota, alleging his Toyota-made Lexus brand car was defective. His case was added to a group of coordinated state court proceedings involving claims of unintended acceleration in cars Toyota manufactures. After Pruchnik's case settled, he moved to exempt his case from the 8 percent common benefit fee imposed by court order on all plaintiffs in the coordinated proceedings. The fee compensates lead counsel for their investigatory and legal work, the gathering of discovery, and the creation of work product that is made available to all plaintiffs' counsel in the coordinated proceeding via a shared repository. Pruchnik argues he did not use the shared materials and thus should not have to pay the fee. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A.    *The Coordinated Unintended Acceleration Cases*

Since 2009 more than 500 lawsuits have been filed in federal and state courts against Toyota, alleging injuries, death, or property damage caused by unintended acceleration in Toyota and Lexus cars. In March 2010 the plaintiffs in one of those cases petitioned to coordinate the California state cases based on the common issue of the cars' propensity to experience incidents of unintended acceleration. (See Code Civ. Proc., § 404 [providing for coordination of actions "[w]hen civil actions sharing a common question of fact or law are pending in different courts"].) Soon afterward the Chair of the Judicial Council ordered coordination

---

[1]    Pruchnik died in May 2024. We granted his attorney Norman Shaw's motion to substitute in for Pruchnik as executor of his will.

of 40 existing cases in the Los Angeles Superior Court, creating the Judicial Council Coordinated Proceeding No. 4621 (JCCP). Since then, Toyota filed 42 successful motions to add cases to the JCCP, and plaintiffs also moved to join additional cases.

Similarly, in April 2010 the United States Judicial Panel on Multi-District Litigation coordinated and consolidated 83 federal unintended acceleration lawsuits against Toyota into a multi-district proceeding (MDL) in the Central District of California. Over 200 more federal cases have since been added.

B.      *Pruchnik's Accident, Lawsuit, Coordination, and Settlement*

On Christmas Day 2015, Pruchnik's 2008 Lexus ES350 crashed in La Jolla, California. Pruchnik's wife, who was a passenger, died from the impact, and Pruchnik, the driver, was hospitalized.

In 2016, Pruchnik hired attorney Garo Mardirossian to file a product liability suit against Toyota. Mardirossian had previously served as lead trial counsel for the plaintiffs in *Uno v. Toyota*, Los Angeles Superior Court case No. BC687726, the bellwether state court case involving sudden unintended acceleration in Toyota vehicles.

In December 2017, Mardirossian filed a complaint against Toyota Motor Sales, U.S.A., Inc.; Toyota Motor Corporation; Toyota Motor North America, Inc.; and Toyota Motor Engineering & Manufacturing North America, Inc. (collectively, Toyota) alleging causes of action for strict liability, negligence, and breach of express and implied warranties. The complaint alleged Pruchnik's car "suddenly and unexpectedly accelerated to high speeds" and, due to Pruchnik's inability to stop or slow the car, "went off the roadway and crashed." The complaint further alleged the unexpected acceleration was caused by the car's

3

defective electronic throttle system. Further, the car "was not designed or equipped with a properly designed brake override that would prevent or impede the unexpected acceleration." In July 2018, Mardirossian served Toyota with the complaint and a summons.

The following month, Toyota filed a petition to add Pruchnik's case to the JCCP and a proof of service showing it served Mardirossian with the petition. (See Cal. Rules of Court, rule 3.544.) At that time, there were 21 pending cases in the JCCP. In Toyota's petition, which was unopposed, Toyota argued Pruchnik's case "relate[d] to the same basic alleged product liability defect that vehicles manufactured by Toyota and purchased by plaintiffs have a propensity to experience [unintended acceleration]." It asserted that "[m]ost of the [unintended acceleration] actions do not allege a specific defect but assert that unintended acceleration is caused by alleged defects in Toyota's floor mats, accelerator pedals, and/or electronic throttle control systems . . . and other components." Toyota argued that coordination would allow the parties to "refer to a uniform work product" rather than recreate it case by case and engage in duplicative discovery and motion practice. In particular, Toyota asserted "[c]oordination can curtail duplicative discovery on a variety of subjects including, for example, whether Toyota's [electronic] throttle control system is defective and causes 'unintended acceleration.' "

On August 17, 2018, the court granted Toyota's petition for coordination and added Pruchnik's action to the JCCP. Toyota filed the notice of entry of order granting the coordination petition on October 15, 2018. Pruchnik claims he was not

4

notified of the petition, the grant of the petition, or what it meant for his case.

Once added to the JCCP, Pruchnik's case was subject to a court-ordered Intensive Settlement Process (ISP), consisting of an informal settlement conference and then, if necessary, a formal mediation. During the ISP, "all pretrial, discovery and related activity" was stayed until the Settlement Special Master certified the parties had complied with ISP requirements.

On October 5, 2018, Pruchnik formally substituted attorney Norman Shaw for his original counsel Mardirossian. Shaw signed the substitution form on September 17, and Mardirossian signed on September 28.

Two years later, in October 2020, the Settlement Special Master notified the court that Pruchnik's case completed the ISP, leading the case to be transferred back to the court for trial and the stay on discovery lifted.

In February 2021, Pruchnik filed a status report stating he would "renew his discovery request that his retained embedded software engineer experts be provided access to the Toyota vehicle software code room in order to analyze and evaluate embedded software codes related to this case as has been previously allowed in other cases" in the JCCP and MDL. In August 2021, the parties submitted a joint status report stating "[t]he parties have worked out a stipulation concerning the use of source code materials at trial and Toyota's counsel is finalizing the stipulation and will provide it to plaintiff's counsel for review and then provide it to the Court."

In September 2022 the parties informed the court they had settled.

C.     *The Common Benefit Fund and Pruchnik's Motion for Relief*
1.     *The Common Benefit Fund*

In early 2014, before Pruchnik's accident, the JCCP's Plaintiff's Steering Committee (the Committee) moved to create a Common Benefit Fund. The Committee, which included Pruchnik's original attorney Mardirossian, had conducted foundational work in the litigation, including gathering and managing shared discovery and work product. The purpose of the Common Benefit Fund was to "establish a reasonable prospective contingent assessment upon recoveries from the personal injury/wrongful death claims comprising the Toyota unintended acceleration litigation" to ensure "the fair and equitable sharing, among all plaintiffs, of the costs of services performed and expenses incurred by the [Committee] and any other attorney who worked for the Common Benefit." The Court granted the Committee's request and issued a Common Benefit Order (Order) establishing the Common Benefit Fund.

The Order provides that all plaintiffs' counsel in the JCCP "shall have access to" the "Common Benefit Work Product" that was "developed by, at the direction of, and in conjunction with" the Committee, including "documents and information gathered, deposition testimony taken, and expert materials developed in the JCCP." The Order instructs: "This order expressly applies to (i) All cases that have been or may be transferred to this JCCP, except those which have been removed from the JCCP due to subsequent re-evaluation of the questions presented by the case, (ii) all cases that have been or may be filed in this Court as components of or related to this JCCP; and (iii) all cases ordered by this Court to be subject to this Order that are settled, compromised, dismissed or resolved by a judgment for monetary

6

damages or other monetary relief, with or without trial, including compensatory and punitive damages, based upon alleged damage or injury (including death) arising from a Toyota unintended acceleration incident or claimed unintended acceleration-related defect or course of wrongful conduct. Such cases that are settled, compromised, dismissed or resolved by a judgment for monetary damages or other monetary relief after December 12, 2013, will be subject to an assessment equivalent to eight percent (8%) of the gross monetary recovery, said assessment to be withheld by the Toyota Defendants as a deduction from such recoveries at the time of payment of settlement proceeds or satisfaction of judgment and paid into the Common Benefit Fund." The Order provides that if Toyota does not withhold the amount of the assessment in a particular case, the plaintiffs and their counsel are jointly responsible for paying the assessment into the Common Benefit Fund. No dismissal order may be filed unless accompanied by a certification from plaintiffs' and Toyota's counsel that the required assessment has been deposited "or that such assessment is not required, for example, with a waiver of costs."

2. *Pruchnik's motion for relief*

In November 2022 Pruchnik moved for relief from the 8 percent assessment to the Common Benefit Fund that Toyota was required to withhold from Pruchnik's settlement proceeds under the Order. He argued that he received no benefit from the Committee's work product and imposing the fee would be inequitable and inconsistent with the Common Benefit Fund's purpose. He claimed his case involved different facts than those in the JCCP and that neither he nor his attorney ever requested or received any common benefit discovery.

7

Pruchnik differentiated his case from the JCCP cases in two ways. First, he contended that while the JCCP cases involved unintended acceleration, his case involved a cruise control problem. Pruchnik reported that after he engaged the cruise control, he applied the brake pedal to stop his car, but the car did not stop and instead "continued at speed." Second, Pruchnik contended that the JCCP cases involved vehicles that lacked a brake override system, while Pruchnik's car had a brake override system, which caused his car to "behave entirely different than JCCP Toyota vehicles."

Because of these purported key differences, Pruchnik contended none of the Common Benefit Work Product was of any use or benefit to his case. Rather, Pruchnik claimed he "had to start from scratch by hiring [his] own team of various experts to analyze the specific circumstances of his case." He declared that he bought a similar Lexus vehicle for use as a test vehicle and then paid for the testing and analysis of that vehicle by his team of experts. Shaw also declared that no information from the Committee's work was considered in reaching Pruchnik's mediated settlement.

In December 2022 the Committee, which was not a party to the case, opposed Pruchnik's motion. The Committee argued that, like other JCCP cases, Pruchnik's case alleged a defect in Toyota's electronic throttle control system. It claimed such allegations rely on "extensive and exhaustive common benefit discovery and expert testimony" about the electronic throttle control system's design, development, and function. The Committee asserted Pruchnik could not have succeeded at trial or obtained the settlement result he did without this shared discovery and work product.

8

The Committee submitted declarations from Committee member Moses Lebovits and from Pruchnik's former counsel, Mardirossian. Lebovits set forth the Committee's extensive work to develop the Common Benefit Work Product. To begin discovery on Toyota's source code, the parties negotiated a "non-sharing and highly confidential protective order," vetted and hired software experts, and established a secure source code facility in Southern California to which only a limited number experts had access. The Committee deposed over 100 Toyota employees, including software engineers in Japan, and participated in regular meetings over several years to share information.

Lebovits stated that "[t]he MDL and JCCP constantly shared common benefit information and discovery with each other, including the documents, depositions, and expert findings. . . . The time and money spent by the committees leading the MDL and JCCP to uncover the potential issues in Toyota's software is in the millions" of dollars.

Lebovits asserted "[m]ost if not all matters in this JCCP involve an alleged defect of design in the electronic throttle control system in Toyota vehicles." Lebovits also stated that "[t]he lead bellwether case in the [MDL] Toyota Acceleration Cases alleged the cruise control failed to disengage when the driver attempted to slow the vehicle down. Extensive testing, research, and time was spent investigating the Toyota software to try to prove that a defect in Toyota's software existed."

Lebovits stated claims involving alleged defects in Toyota's software "cannot be established at trial, and Toyota's defenses to such claims could not be overcome at trial, without reliance on extensive and exhaustive common benefit discovery and expert

9

testimony on the history, development, design, and operation of the Toyota electronic throttle control system." He asserted that all the written discovery and pleadings were made available to all the plaintiffs through an online case management system. Lebovits also explained the ISP, in which "dozens of cases ha[d] settled without the parties having to conduct even case specific discovery."

Mardirossian declared that, as Pruchnik's original counsel, he alleged on Pruchnik's behalf that Pruchnik's Lexus was defective in design based on "[c]ommon benefit discovery and work product through expert analysis of the software code . . . establishing that, because certain tasks in the [electronic throttle control system] software system can become inoperative, the [electronic throttle control system] can . . . stop responding. As a result, including when the cruise control is active, the vehicle can continue to accelerate forward even if the driver is telling it to slow down." He also alleged that the Lexus was defective because it was not equipped with a proper brake override system, which common benefit discovery and work product established would have allowed a driver to stop the car even if there was a defect in the electronic throttle control system.

Mardirossian asserted he "provided substantial and valuable legal services to Pruchnik," including investigating the accident, filing the complaint, "hiring and consulting with experts and consultants, marshalling voluminous documents produced by Toyota, filing pleadings, articulating Plaintiff's theory to Toyota, and participating in ISP negotiations with Toyota and the Special Master." He did not include any corroboration or proof, such as time records or other documents, of his work on Pruchnik's case. But he specifically asserted he "used common benefit work in

10

litigating the Pruchnik case, including during the ISP negotiations held with Toyota and the Special Master." Mardirossian stated he obtained a "favorable settlement offer for Pruchnik," but before he "could finalize the settlement," Shaw informed him that Shaw was taking over Pruchnik's case.

In his reply, Pruchnik argued that the Order did not entitle the Committee to an automatic fee from all Toyota settlements. Rather, he claimed the Order required "actual specific work that was authorized by the Committee and invoiced by proper submissions of records" and that no such work benefited his case. Pruchnik also disputed Mardirossian's claim that Mardirossian consulted experts or reviewed Toyota's documents in connection with Pruchnik's case. He asserted the file Mardirossian gave to Shaw contained no such documents and all experts in the case were hired and paid for by Pruchnik directly. Shaw submitted a supplemental declaration stating Mardirossian's case file included no common benefit discovery, no documents relating to experts, and no materials related to ISP participation, except for one letter (the contents of which are not in the record). Pruchnik also submitted a supplemental declaration attesting that Mardirossian never obtained a favorable settlement offer.

3. *The hearing and ruling*

At the December 2022 hearing, Shaw clarified the settlement did not result from the ISP but was reached through three private mediations after the ISP had terminated. Toyota's counsel stated Pruchnik's ultimate settlement was $500,000 more than anything offered before Shaw's involvement. Shaw stated his "interpretation of the situation is it is far higher than 500,000 dollars more."

11

Shaw disagreed with the Committee's assertion that hiring experts who could reproduce the Committee's findings would have required a "seven-figure" investment and explained that his experts focused on the car's performance and speed calculations, rather than the car's software. He stated Pruchnik's retained experts produced no reports and declined to name the experts, citing confidentiality. The court remarked it seemed "a little unusual that a great deal of money is going to change hands in a case like this with no expert discovery and no reports and no designations."

In response to the court's questions, Shaw said he did not know whether the theory of Pruchnik's case involved a defect in the electronic throttle control system, and he knew only that Pruchnik could not disengage cruise control. When the court asked if software issues were involved, Shaw stated, "I believe that's one theory that could . . . have explained why he couldn't get out of cruise control." The Committee responded that sudden acceleration encompassed a number of different issues, and all the JCCP cases (and MDL cases as well) involved a failure of the electronic throttle control system, "whether it was cruise control, [or] whether it was that the car wouldn't stop" or continued to accelerate.

The court denied Pruchnik's motion: "Pruchnik does have the burden on this motion to show that he ought not to be assessed, and I don't think Mr. Pruchnik carried the burden. There's an inadequate evidentiary record here for me to conclude that more likely than not Toyota in a case in this JCCP" would pay "mid to high six figures" in the absence of the work done by the Committee. "And in the absence of any information about

12

your expert, who he or she is, what he or she did, what he or she looked at, I do not find you carried your burden of proof."

In February 2023 Pruchnik requested the court dismiss his complaint with prejudice. On March 6, 2023, the court dismissed Pruchnik's case. On March 10, 2023, the court entered its order denying Pruchnik's motion for relief from the 8 percent assessment. Pruchnik timely appealed the order denying relief.

## DISCUSSION

A. *The Order Denying Relief from the 8 Percent Assessment Is Appealable*

The Committee argues we should dismiss Pruchnik's appeal because Pruchnik voluntarily dismissed the case after settling, and the court's order denying Pruchnik's motion for relief from the 8 percent assessment is not independently appealable. The order is appealable.

" ' " '[N]o appeal can be taken except from an appealable order or judgment, as defined in the statutes and developed by the case law.' " ' " (*Aixtron, Inc. v. Veeco Instruments Inc.* (2020) 52 Cal.App.5th 360, 384; accord, *J.H. Boyd Enterprises, Inc. v. Boyd* (2019) 39 Cal.App.5th 802, 810.) Because Pruchnik voluntarily dismissed his case and no judgment was entered, his appeal does not fall under Code of Civil Procedure section 904.1, subdivision (a)(2), which provides that an appeal may be taken from an order made after a final judgment.

However, the order denying Pruchnik's motion for relief is appealable because it satisfies the requirements of the collateral order doctrine. "To be appealable, a collateral order must (1) finally determine (2) a matter collateral to the litigation and (3) require the payment of money or the performance of an act."

13

(*Luo v. Volokh* (2024) 102 Cal.App.5th 1312, 1326; accord, *Hanna v. Mercedes-Benz USA, LLC* (2019) 36 Cal.App.5th 493, 506.)

The order denying Pruchnik's request to be exempt from the Common Benefit Fund assessment satisfies all three criteria. First, the order "finally determines" that Pruchnik is bound by the provisions of the Order subjecting him to the 8 percent assessment of his settlement amount, to be withheld by Toyota and paid into the Common Benefit Fund. Second, the matter is collateral—i.e., it is " 'distinct and severable . . . from the general subject of the litigation.' " (*Dr. V. Productions, Inc. v. Rey* (2021) 68 Cal.App.5th 793, 797.) Pruchnik's responsibility under the Order to pay into the Common Benefit Fund is distinct and severable from the issue of whether Toyota is liable to Pruchnik due to a defect in Pruchnik's Lexus that led to the car accident. Toyota did not even "have a dog in th[e] fight" over the 8 percent assessment, as the trial court noted and Toyota acknowledged at the hearing; rather, it was a third party, the Committee, that opposed Pruchnik's motion for relief and had an interest in whether Pruchnik was exempted from the 8 percent assessment. Third, the effect of the order denying Pruchnik's request to exempt him from the 8 percent assessment is to ensure that Toyota withholds that amount from his settlement proceeds. The order is akin to one ordering Pruchnik to pay attorney fees, because he will receive a settlement award that is offset by the amount of the fees constituting 8 percent of his recovery. (See *Hanna v. Mercedes-Benz USA, LLC, supra*, 36 Cal.App.5th at p. 506 [order awarding attorney fees and costs was appealable under collateral order doctrine]; *California Licensed Foresters Assn. v. State Bd. of Forestry* (1994) 30 Cal.App.4th 562, 565, fn. 1 ["An order awarding attorney fees is collateral to the main

14

action and separately appealable."]; *Rich v. City of Benicia* (1979) 98 Cal.App.3d 428, 432.) The order was appealable as a collateral order.

B. *The Court Did Not Err in Denying Pruchnik's Motion for Relief from the 8 Percent Assessment*

1. *Rationale for common benefit assessments*

The common benefit assessment is a mechanism for sharing the costs of work performed by lead counsel in a coordinated proceeding, given that the resulting discovery and work product benefit not only the lead counsel's case but also the plaintiffs and their lawyers in all of the individual cases. (5 Newberg and Rubenstein on Class Actions (6th ed.) Common Benefit Fees, Common benefit fees—Generally, § 15:112.) "Specifically, the lawyers not involved in undertaking common benefit work . . . are effectively taxed a portion of their attorney's fees, with the tax ultimately being distributed to the lawyers who undertook common benefit work. The common benefit fee is therefore a means of allocating attorney's fees among hundreds or thousands of lawyers involved in a single set of cases." (*Ibid.*; see also *id.*, § 15:113 [discussing rationale for common benefit funds].)

"If those other plaintiffs were not required to pay any costs of that work [by lead counsel], high-quality legal work would be under-incentivized and, ultimately, under-produced." (*In re General Motors LLC Ignition Switch Litigation* (S.D.N.Y. 2020) 477 F.Supp.3d 170, 174 (*General Motors*).) As one federal district court described the common benefit fee in the context of the MDL (the federal version of the JCCP), "[w]ithout a common benefit fund mechanism, MDL courts would not only be unable to attract good counsel for leadership roles, they would be unable to attract

15

any counsel. Lead MDL counsel invest thousands of hours in attorney time and millions of dollars in costs. No counsel would be willing to do so without some assurance that their time and costs would be repaid if the MDL ultimately were successful." (*In re Bard IVC Filters Prods. Liab. Litig.* (D. Ariz. 2022) 603 F.Supp.3d 822, 831 (*Bard*).) Accordingly, it is increasingly common in JCCP or MDL proceedings to require plaintiffs to pay a "holdback" or "assessment" toward a common benefit fund. (See, e.g., *id.* at p. 840 [approving 8 percent assessment for attorney fees and a 2 percent assessment for expenses]; *In re Roundup Prods. Liab. Litig.* (N.D. Cal. 2021) 544 F. Supp. 3d 950, 971 [approving holdback of "8% of a plaintiff's gross recovery"].) "[I]f [an] attorney has a 33% contingent fee but is relieved of significant pre-trial work by virtue of having a case transferred into an MDL [or JCCP], an assessment of around 8% effectively reflects a quarter of the contingent fee, commensurate with being relieved of a quarter of the underlying work." (5 Newberg and Rubenstein on Class Actions, *supra*, Common Benefit Fees, Calculation method, § 15:116.)

     2.    *Standard of review*

    The parties presented conflicting accounts of whether Pruchnik's attorneys (his original counsel Mardirossian and/or the successor attorney Shaw) relied on or benefitted from the work product and discovery done by the Committee in Pruchnik's case. The trial court determined that Pruchnik presented "an inadequate evidentiary record" from which to conclude the settlement in Pruchnik's case was achieved without the benefit of Common Benefit Work Product. Pruchnik challenges that determination and suggests Mardirossian provided incorrect

16

information to the court about Mardirossian's reliance on Common Benefit Work Product while representing Pruchnik.

" ' "[I]t is the province of the trial court to decide questions of fact and of the appellate court to decide questions of law . . . ." ' " (*Jack v. Ring LLC* (2023) 91 Cal.App.5th 1186, 1211.)  Ordinarily, when an appellant contends there is insufficient evidence to support a finding of fact, we apply the substantial evidence standard of review.  (See *Slone v. El Centro Regional Medical Center* (2024) 106 Cal.App.5th 1160, 1173.)  But where " 'the trier of fact has expressly or implicitly concluded that the party with the burden of proof did not carry the burden and that party appeals, it is misleading to characterize the failure-of-proof issue as whether substantial evidence supports the judgment.' " (*Sonic Manufacturing Technologies, Inc. v. AAE Systems, Inc.* (2011) 196 Cal.App.4th 456, 465.)

Instead, when an appeal turns on the appellant's failure of proof, " 'the question for a reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law.  [Citations.]  Specifically, the question becomes whether the appellant's evidence was (1) "uncontradicted and unimpeached" and (2) "of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding." ' " (*Sonic Manufacturing Technologies, Inc. v. AAE Systems, Inc.*, *supra*, 196 Cal.App.4th at p. 466; see *Argueta v. Worldwide Flight Services, Inc.* (2023) 97 Cal.App.5th 822, 840; *Valero v. Board of Retirement of Tulare County Employees' Assn.* (2012) 205 Cal.App.4th 960, 966.)

The trial court determined, Pruchnik concedes, and we agree that Pruchnik bore the burden of proof on his motion for relief.  Pruchnik's case fell within the parameters of the Order,

17

which subjects "[a]ll cases that have been or may be transferred to this JCCP" and that are resolved after December 2013 by settlement, dismissal, or judgment, to "assessment equivalent to eight percent (8%) of the gross monetary recovery."  Pruchnik had the burden to prove his case should be exempted from the 8 percent assessment required by the Order because Common Benefit Work Product played no part in the resolution of his case. (See *Standard Pacific Corp. v. Superior Court* (2009) 176 Cal.App.4th 828, 834 ["As a rule, the party seeking to rely on an exception to a general rule has the burden of proving the exception."]; see also Evid. Code, § 500; *Green v. State of California* (2007) 42 Cal.4th 254, 263.)  Because the trial court determined Pruchnik failed to meet that burden, to prevail on this appeal, Pruchnik must demonstrate that the evidence compels a finding in his favor as a matter of law that Pruchnik did not rely on or benefit from any Common Benefit Work Product in securing his settlement with Toyota.

        3.    *Pruchnik did not establish his entitlement to an exemption from the 8 percent assessment as a matter of law*

The trial court found that Pruchnik did not demonstrate that he independently worked up his case that his Lexus was defective, and thus he failed to carry his burden to show the settlement with Toyota did not depend in part on Common Benefit Work Product.  The evidence does not compel a contrary finding as a matter of law.

Pruchnik relies on Shaw's declaration that Shaw did not request or use any Common Benefit Work Product and that no documents, information, or discovery derived therefrom were considered in reaching the settlement with Toyota.  Pruchnik

18

declared that he hired his own team of experts instead. However, when pressed by the court at the hearing, Shaw acknowledged these experts did not prepare any reports, and he declined to identify them or the scope of their work, understandably causing the court to question Pruchnik's contention that the settlement with Toyota was achieved without any reliance on Common Benefit Work Product.

Moreover, Pruchnik failed to show that Shaw's predecessor Mardirossian did not access and rely on Common Benefit Work Product in litigating Pruchnik's case and negotiating with Toyota before Pruchnik terminated him. While Pruchnik asserted that the paper case file that Mardirossian provided to him contained no Common Benefit Work Product, the absence of printed materials from the Committee's shared repository does not demonstrate as a matter of law that Mardirossian did not access or use Common Benefit Work Product for Pruchnik's case. Moreover, in his declaration, Mardirossian asserted he "used common benefit work in litigating the Pruchnik case, including during the ISP negotiations held with Toyota and the Special Master." Even if Shaw did not rely on Common Benefit Work Product, the trial court was entitled to credit evidence that Pruchnik's former counsel did. (See *In re Diet Drugs Prods. Liab. Litig.* (E.D. Pa. 2008) 553 F.Supp.2d 442, 496-497 (*Diet Drugs*) [denying motions to exempt and reduce common benefit assessment amounts and stating the movant "cites no legal authority suggesting that established assessment percentages should be changed merely because participating counsel obtained recoveries in remanded cases without relying entirely on common benefit work"].)

Pruchnik asserts that even if Mardirossian accessed Common Benefit Work Product for Pruchnik's case, the materials were not useful because "the theory was the vehicle was 'stuck in cruise control' not that there was any 'unintended acceleration.'" In addition, "the JCCP vehicles did not have a brake override system, while Mr. Pruchnik's had a brake override system." However, the Committee presented evidence that the inability to disengage from cruise control mode was tied to a possible defect with the electronic throttle control system, a common issue in the JCCP and MDL proceedings. For example, the bellwether case in the MDL concerned a cruise control problem. At the hearing, Shaw admitted he did not know whether the theory of Pruchnik's case involved a defect in the electronic throttle control system and knew only that Pruchnik could not disengage cruise control. He also conceded that a software issue could be "one theory that could . . . have explained why he couldn't get it out of cruise control." The court thus reasonably concluded the Common Benefit Work Product with respect to defects with the electronic throttle control system was applicable to and useful in Pruchnik's case. Even if Pruchnik is correct that his car had a brake override system that cars in the JCCP did not, the brake override system was only relevant once the car experienced a failure due to a defect in the electronic throttle control system. Thus, the brake override system was a secondary issue.

Pruchnik also argues that notwithstanding Mardirossian's sworn testimony that he accessed and used the Common Benefit Work Product in Pruchnik's case, it was "impossible" for Mardirossian to have done so. Pruchnik notes he removed Mardirossian from the case on September 17, 2018, before the case was added to the JCCP, and thus Mardirossian could not

20

have accessed the Common Benefit Work Product on Pruchnik's behalf. While Pruchnik is correct that notice of entry of the order adding his case to the JCCP was filed on October 15, the court granted Toyota's petition to add the case on August 17, 2018. It is plausible Mardirossian accessed Common Benefit Work Product between the August order and his September termination one month later. And while Pruchnik argues a stay of discovery was in place once the case was added to the JCCP and subject to the ISP, he has not demonstrated attorneys are barred during the stay period from accessing already-existing Common Benefit Work Product as opposed to propounding new discovery or filing motions.

Pruchnik also questions Mardirossian's credibility. For example, while Mardirossian declared he participated in ISP negotiations on Pruchnik's case, Pruchnik asserts the initial ISP meeting with the Settlement Special Master did not happen until November 7, 2018, months after he terminated Mardirossian. Pruchnik contends this timing shows Mardirossian's claim he participated in ISP negotiations is false. However, the court impliedly found Mardirossian credible, and we must generally defer to the credibility determinations of the trial court. (See *Zachary H. v. Teri A.* (2023) 96 Cal.App.5th 1136, 1143.) And although there may be some inconsistencies in Mardirossian's declaration, Pruchnik has not demonstrated that Mardirossian's representations were necessarily false. While the first meeting with the Special Master was in November, it is feasible Mardirossian participated in early informal oral negotiations with Toyota and the Special Master in August and September 2018 before his termination, leading to the procurement of an initial settlement offer.

Moreover, while the settlement Shaw negotiated was higher than the offer obtained during Mardirossian's tenure, that does not mean the Common Benefit Work Product played no role. Even if Shaw did not personally use the Common Benefit Work Product, Pruchnik still may have benefitted in his settlement from Toyota's awareness of a software issue concerning the electronic throttle control system that came to light as a result of the common benefit work. Such an issue could have prompted Toyota to offer a higher settlement amount, without Pruchnik or Shaw being privy to Toyota's motivations. (See *Diet Drugs*, *supra*, 553 F.Supp.2d at p. 497 ["To assume that [the defendant's] legal position on most questions, including questions regarding settlement, has not been influenced by their adversarial engagement with the [plaintiff's counsel committee] is unrealistic."]; see also *Bard*, *supra*, 603 F.Supp.3d at p. 835 [although plaintiff's counsel had to take additional depositions and produce experts, the case was still subject to a common benefit assessment because counsel's "cases for its clients were built on the foundation of the MDL work. It is simply incorrect to assert that they did not benefit from that work"].)

Pruchnik also contends that the Committee's attorneys failed to submit time or expense records for his case and that he should have seen documentation of what Common Benefit Work Product Mardirossian accessed. But the Order imposes documentation requirements only for *disbursements* from the Common Benefit Fund to attorneys who contributed work—not for a plaintiff's *reliance* on the work product. The Order does not condition the obligation to pay 8 percent on a showing in each individual case that the plaintiff's attorney relied on the Common Benefit Work Product. Such a requirement would run counter to

22

the purpose of the Order to facilitate the streamlining of litigation for coordinated cases. (See *Diet Drugs*, *supra*, 553 F.Supp.2d at p. 497 ["We will not wade into the morass of determining which of the hundreds of lawyers used, did not use, or used only to a limited extent, the materials and services available through the work of the common benefit attorneys. Such a process would undermine one of the key purposes of an MDL—effecting the efficient litigation of tens of thousands of related cases."]; *General Motors*, *supra*, 477 F.Supp.3d at p. 184 ["Indeed, '[t]he benefit created by common labor and compensated by joint assessments is sometimes intangible and difficult to quantify in individual cases.' [Citations.] For these reasons, neither common benefit orders in general nor Order No. 42 in particular requires a 'case-by-case review for whether any particular claimant has actually benefitted from common benefit work.' "].)

We note that if Pruchnik (or Shaw) came to believe Pruchnik's case was factually distinct from those in the JCCP, he could have sought removal from the JCCP.[2] (See *Bard*, *supra*,

_____

[2] Pruchnik asserts Mardirossian did not inform him of Toyota's petition to add his case to the JCCP or about the 8 percent assessment. But under agency principles, an attorney's knowledge is imputed to the client. (*Roche v. Hyde* (2020) 51 Cal.App.5th 757, 797; accord, *Lazzarevich v. Lazzarevich* (1952) 39 Cal.2d 48, 50 ["[o]rdinarily a person is held to know what his attorney knows and should communicate to him"].) Any breach of Mardirossian's obligation to disclose to Pruchnik the arrangement with respect to the Common Benefit Fund does not affect Pruchnik's obligation to pay the assessment. (See *General Motors*, *supra*, 477 F.Supp.3d at p. 174 ["If the Firms' clients did

603 F.Supp.3d at p. 828 [counsel moving to exempt a case from a common benefit assessment in an MDL "could have avoided paying assessments . . . by declining to become Participating Counsel and forgoing the opportunity to receive and use common benefit work"].)  The Order only applies to "cases that have been or may be transferred to this JCCP, *except those which have been removed from the JCCP due to subsequent re-evaluation of the questions presented by the case.*"  (Italics added.)  The court found the case qualified for inclusion in the JCCP, and Pruchnik did not request a reevaluation of that determination.   As such, there is a strong presumption that Pruchnik's case shared common issues with the JCCP cases that would benefit from Common Benefit Work Product.[3]

In sum, the trial court could reasonably conclude that Pruchnik failed to meet his burden to prove he should be exempt

---

not know that their prospective settlements would be assessable, that is on the Firms"].)

[3]    Pruchnik argues his obligation to pay the assessment is not dependent "on the common benefit's mere existence," but rather requires actual use of Common Benefit Work Product.  However, the Order states it "expressly applies to (i) All cases that have been or may be transferred to this JCCP," and any case resolved after December 2013, whether by settlement, dismissal, or judgment, is subject to "assessment equivalent to eight percent (8%) of the gross monetary recovery."  Nothing in the Order conditions the assessment on actual use of the materials provided, or states plaintiffs may avoid the assessment by showing nonuse of the work product.  However, we need not resolve this issue because, even assuming the Order conditions payment of the 8 percent assessment on use of the Common Benefit Work Product, Pruchnik has not shown the evidence compels a finding in his favor.

24

from the 8 percent assessment.  The trial court did not err in denying relief to Pruchnik from the 8 percent assessment towards the Common Benefit Fund.

## DISPOSITION

The order is affirmed.  The Committee is to recover its costs on appeal.

STONE, J.

We concur:

MARTINEZ, P. J.

FEUER, J.